FILED

2004 OCT 26  P 12: 21

U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NATIONAL SURETY CORPORATION

                             Plaintiff,

vs.

STEADFAST INSURANCE COMPANY,
NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK, METRO
NORTH COMMUTER RAILROAD
COMPANY and NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH

                           Defendants.

CIVIL ACTION NO.
3:02CV00976 (WWE)

October 22, 2004

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

Pursuant to F.R.C.P. 15, 19 and 20, and the Orders of this Court dated August 13, 2003 and September 27, 2004 (*Eginton, J.*) the plaintiff hereby amends its Complaint as follows:

### PARTIES

1.    At all times hereinafter mentioned, the plaintiff, National Surety Corporation ("NSC") is and was an Illinois corporation with a principal place of business located at 777 San Marin Drive, Novato, California. NSC is in the business of selling and issuing insurance policies, and is licensed to conduct such business in the State of Connecticut.

2.    At all times hereinafter mentioned, the defendant, Steadfast Insurance Company

("Steadfast"), is and was a Delaware corporation with a principal place of business located at 1400 American Lane, Schaumburg, Illinois. Steadfast is in the business of selling and issuing insurance policies, and is licensed to conduct such business in the State of Connecticut as an excess/surplus lines insurer.

3.    At all times hereinafter mentioned, the defendant, National Railroad Passenger Corporation d/b/a AMTRAK ("AMTRAK"), is and was a foreign corporation formed pursuant to the laws of the District of Columbia. AMTRAK operates interstate railroad trains and has a place of business located within the State of Connecticut.

4.    At all times hereinafter mentioned, the defendant, Metro North Commuter Railroad ("Metro North"), is and was a corporation duly organized, created and existing under the laws of the State of New York and is and was a common carrier in interstate transportation and commerce by railroad. Metro North operates interstate railroad trains and has a principal place of business within the State of New York.

5.    At all times hereinafter mentioned, the defendant, Ducci Electrical Contractors, Inc. ("Ducci"), is and was a domestic corporation organized and existing under the laws of the State of Connecticut with a principal place of business at 427 Goshen Road, Torrington, Connecticut.

6.    At all times hereinafter mentioned, the defendant, National Union Fire Insurance Company of Pittsburgh ("National Union"), is and was a company domiciled in Pennsylvania with a

-2-

principal place of business located at 70 Pine Street, New York, New York.  National Union is in the business of selling and issuing insurance policies, and is licensed to conduct such business in the State of Connecticut.

## JURISDICTION

7.    Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1349.  The Defendant AMTRAK was created by an Act of Congress, 49 U.S.C. §24101 *et seq.*, and more than one-half of its capital stock is owned by the United States.

## FIRST COUNT (DECLARATORY RELIEF)

8.    On or about March 31, 1997, Ducci and the State of Connecticut, Department of Transportation ("CT DOT") entered into a contract ("subject contract") for certain electrical work to be performed at the railyard located in New Haven, Connecticut.  The railyard was and is owned, operated, controlled, maintained and/or possessed by Metro North.

9.    The subject contract concerned a project known as the New Haven Interlocking Reconfiguration  Project, and the work to be performed by Ducci was for "catenary replacement between structures 1045 & 73-16 (AM)" at Metro-North's New Haven rail yard.

10.    On or about January 22, 1999, at approximately 11:00 a.m., Robert Chapman, while working as a lineman in the employment of Ducci in the performance of the subject contract, was allegedly injured while checking electrical wires on a pole at Metro-North's New Haven rail yard.

-3-

11.     In March 2000, Mr. Chapman brought suit in the Superior Court, judicial district of New Haven at Meriden, against Metro-North, generally alleging that it was the negligence of Metro-North in failing to advise and notify Chapman of the live wire which resulted in his injuries, and also providing him with contrary information that the wire was dead. That suit, entitled <u>Robert Chapman vs. Metro North Commuter Railroad</u>, Docket No. CV-00-0271767-S ("<u>Chapman</u> suit"), is still pending.

12.     On July 22, 1999, Michael Gargano, an employee of Ducci, while installing electrical wires to be used for a high-speed rail line at Metro-North's New Haven rail yard, and while in the performance of the subject contract, was allegedly injured when certain electrical lines became energized and came into contact with his body.

13.     In August 2000, Mr. Gargano brought suit in the Superior Court, judicial district of New Haven against National Railroad Passenger Corporation and Metro-North for the injuries sustained in the July 22, 1999 accident. That suit, entitled <u>Michael Gargano vs. National Railroad Passenger Corporation d/b/a AMTRAK, et al.</u>, was subsequently removed to the federal district court in Connecticut, and bears case number 300 CV 1477 (WWE) ("<u>Gargano</u> suit"). That suit is still pending.

14.     At all times mentioned herein, Ducci was insured under a commercial general liability policy issued by NSC (Policy No. MXC 8036662) with liability limits of $1 million per occurrence and $2 million aggregate, effective July 1, 1998 to July 1, 1999. Upon expiration, the NSC Policy was renewed (Policy No. MXC 803376163) with liability limits of $1 million per occurrence and $2 million

aggregate, effective July 1, 1999 to July 1, 2000 ("NSC Policies")

15.    At all times mentioned herein, AMTRAK and Metro North were insured under a Railroad Protective Liability Policy (Policy No. SCO 3649220-03) issued by Steadfast for the policy period of December 1, 1995 to December 1, 1996 ("Steadfast Policy"). The policy was extended by endorsement to December 1, 1999. The Steadfast Policy provides limits of $10 million each occurrence and $20 million in the aggregate.

16.    At all times mentioned herein, Metro North and/or AMTRAK were insured under a Commercial General Liability Policy (Policy No. RM GL 3199367) issued by National Union for the policy period of April 1, 1994 to April 1, 1995 ("National Union Policy"). Coverage under the National Union Policy was extended by endorsements to June 1, 2000.

17.    At all times mentioned herein, the National Union Policy provides, *inter alia*, Railroad Protective Liability Coverage for Metro North and/or AMTRAK.

18.    The NSC Policies contain a Multi-Cover endorsement which provides for blanket additional insured coverage. The Multi-Cover endorsement states, in pertinent part, the following:

2.    **Blanket Additional Insured**

   **Section II - Who Is an Insured**, item 2. is amended to include:

   e.    Any person or organization that you are required by a written **insured contract** to include as an insured, subject to all the following provisions:

-5-

     (1)     Coverage is limited to their liability arising out of:

          (a)     the ownership, maintenance or use of that part of the premises, or land owned by, rented to, or leased to you; or

          (b)     your ongoing operations performed for that insured. . .

19.    Article 1.03.07 - Insurance of the subject contract between Ducci and CT DOT, as amended, provides that Ducci was to name Metro North and AMTRAK as additional insureds under the NSC Policies. Specifically, the subject contract states, in pertinent part, the following:

General Liability Insurance

A policy issued to and covering liability imposed upon the contractor with respect to all work to be performed and all obligations assumed by the Contract or under the terms of this Contract. Products, completed operations, independent Contractors and contractual liability coverages are to be included and all railroad exclusions are to be deleted.

AMTRAK, CDOT, Metro-North, MTA, Conrail, Providence and Worcester are to be named as additional insureds with respect to the operations to be performed and the policy shall contain a waiver of subrogation against AMTRAK, its employees and agents...

20.    The subject contract is an "insured contract" as that term is defined under the NSC Policies. Accordingly, Metro North and AMTRAK are additional insureds under the NSC Policies for the claims set forth in the Chapman and Gargano lawsuits.

21.    On or about February 20, 2001, NSC conditionally accepted the tender of the defense for both AMTRAK and Metro North under the NSC Policies for the claims set forth in the Chapman

-6-

and Gargano lawsuits. Such acceptance, however, was subject to the "other insurance" provisions in the Steadfast Policy which would determine how and by what method coverage was to be allocated between NSC and Steadfast, as well as the defense obligations to owed to AMTRAK and Metro North under both the NSC Policies and Steadfast Policy.

22.    Section IV-Conditions of the Steadfast Policy provides the following, in pertinent part, with respect to the other insurance available to Metro North and AMTRAK:

**6.    Other Insurance.**

The insurance afforded by this policy is:

a.    Primary insurance and we will not seek contribution from any other insurance available to you except if the other insurance is provided by a contractor other than the designated contractor for the same operation and "job location"...

23.    Ducci is a designated contractor under the Steadfast Policy.

24.    In response to NSC's acceptance of the tender of the defense for both AMTRAK and Metro North, and despite the clear language of the Steadfast Policy, Steadfast has claimed that the NSC Policies provides primary insurance to AMTRAK and Metro North for the claims asserted in the Chapman and Gargano lawsuits and that the Steadfast Policy provides excess coverage.

25.    NSC claims that the Steadfast Policy provides primary insurance coverage for AMTRAK and Metro North for the claims asserted in the Chapman and Gargano lawsuits and, further, that the

-7-

NSC Policies provide excess coverage to AMTRAK and Metro North.

26.    NSC further claims that the National Union Policy provides primary insurance coverage for Metro North and/or AMTRAK for the claims asserted in the <u>Chapman</u> and <u>Gargano</u> lawsuits and, further, that the NSC Policies provide excess coverage to Metro North and/or AMTRAK.

27.    As the Steadfast Policy and National Union Policy provide primary insurance coverage for AMTRAK and/or Metro North for the claims asserted in the <u>Chapman</u> and <u>Gargano</u> lawsuits, NSC has no duty to defend AMTRAK and Metro North pursuant to the terms and conditions of the NSC Policies.

28.    As the foregoing reveals, there is an actual bona fide and substantial question or issue in dispute between the parties and a substantial uncertainty as to their obligations relative to the defense/indemnity of AMTRAK and/or Metro North for the claims asserted in the <u>Chapman</u> and <u>Gargano</u> lawsuits.

**WHEREFORE**, the plaintiff claims:

A judgement declaring that:

(1)    The Steadfast Policy provides primary insurance coverage for AMTRAK and Metro North for the claims asserted in the <u>Chapman</u> and <u>Gargano</u> lawsuits;

(2)    The National Union Policy provides primary insurance coverage for  Metro North and/or AMTRAK for the claims asserted in the <u>Chapman</u> and <u>Gargano</u> lawsuits;

(3)    Any coverage provided by NSC to AMTRAK and/or Metro North for the claims asserted in the <u>Chapman</u> and <u>Gargano</u> lawsuits is excess to insurance coverage provided by Steadfast and National Union;

(4)    Alternatively, should the Court determine that the NSC, Steadfast and National Union policies provide primary coverage for Metro North  and/or AMTRAK, such coverage under the NSC Policies is to be apportioned pursuant to the "Other Insurance" provision contained within the NSC Policies; and

(5)    NSC has no duty to defend AMTRAK and/or Metro North for the claims asserted in the <u>Chapman</u> and <u>Gargano</u> lawsuits pursuant to the terms and conditions of the NSC Policies.

THE PLAINTIFF,
NATIONAL SURETY CORPORATION

By: _____

Darren P. Renner, Esq. (ct15901)
Lustig & Brown, LLP
1177 Summer Street
Stamford, CT 06905
Phone No. 203-977-7840
Fax No. 203-977-8649

## CERTIFICATE OF SERVICE

Pursuant to D.Conn.L.Civ.R. 5, this is to certify that a copy of the foregoing has on October 22, 2004 been mailed, postage prepaid to the following:

Nancy D. Lyness, Esq.
White, Fleischner & Fino
140 Broadway
New York, NY 11005

Anthony J. Nuzzo, Esq.
Nuzzo & Roberts, LLC
One Town Center
PO Box 747
Cheshire, CT 06410

Darrren P. Renner, Esq